# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| SUNNY SNAITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 4:19-cv-01830-JHE |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Sunny Snaith ("Snaith") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Social Security Income ("SSI"). (Doc. 1). Snaith timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Snaith initially filed her application for a period of disability, DIB, and SSI on November 21, 2013, alleging she became unable to work beginning August 19, 2013. (Tr. 150-57). Following administrative denials and an appeal to this Court, the case was remanded for further administrative proceedings. (Tr. 657) (*See Snaith v. Social Sec. Admin., Comm'r*, Case No. 4:16-

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

cv-01823-RDP, doc. 10). Meanwhile, Snaith had filed additional disability applications, which were consolidated with the prior applications on remand. (Tr. 647). Following another hearing, the Administrative Law Judge ("ALJ") denied Snaith's claim on July 26, 2018. (Tr. 644-66). Snaith sought review by the Appeals Council, but it declined her request for review on September 17, 2019. (Tr. 637-43). On that date, the ALJ's decision became the final decision of the Commissioner. On November 11, 2019, Snaith initiated this action. (*See* doc. 1).

Snaith was forty-three-years-old on her alleged disability onset date. (Tr. 657). She has completed two years of college and has past relevant work experience as an accounting clerk, receptionist, office manager, administrative assistant, and tutor. (Tr. 182-83). Snaith alleges she cannot work due to depression, high cholesterol, obsessive compulsive disorder, fatigue, apathy, despondence, diabetes, and high blood pressure. (Tr. 181).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Snaith met the insured status requirements of the Social Security Act through June 30, 2018, and that Snaith had not engaged in substantial gainful activity since the alleged onset date of August 19, 2013. (Tr. 650). At Step Two, the ALJ found that, during the relevant period, Snaith had the following severe impairment: diabetes, tachycardia, hypertension, obesity, anxiety, and depression. (*Id.*). At Step Three, the ALJ found Snaith did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 650-52).

Before proceeding to Step Four, the ALJ determined Snaith's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Snaith had the RFC to perform a limited range of light work as defined in 20 C.F.R. §§404.1567(b), 416.967(b). (Tr. 652-57). The ALJ determined Snaith could perform light work, except that she is limited to occasional pushing and pulling with the upper and lower extremities bilaterally; no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme heat and cold and vibration; no exposure to dangerous machinery or unprotected heights. During a regularly scheduled workday, or the equivalent thereof, this individual can: 1. Understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions. 2. Do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks. 3. Have no more than occasional contact with the general public, and occasional contact with co-workers. 4. Deal with changes in work place, if introduced occasionally and gradually, and are well-explained. 5. Perform job dealing primarily with things, not people. (*Id.*).

At Step Four, the ALJ determined Snaith was unable to perform any past relevant work. (Tr. 657). At Step Five, the ALJ determined, based on Snaith's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Snaith could perform. (Tr. 657-58). Therefore, the ALJ determined Snaith had not been under a disability and denied Snaith's claim. (Tr. 658).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve

the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Snaith raises four issues, contending (A) the ALJ failed to accord proper weight to Dr. Elizabeth Lachman's opinion and failed to show good cause for disregarding it (doc. 11 at 18-33); (B) the ALJ failed to accord proper weight Dr. David Wilson's opinion (*id.*at 33-38); (C) Snaith meets Listing 12.04 and/or 12.06 (*id.* at 38-44); and (D) the ALJ's denial (of benefits) was not based on substantial evidence (*id.* at 44-46).   None of these grounds support remand.

### A.  Whether the ALJ Properly Considered the Opinion of Dr. Elizabeth Lachman

Snaith contends that Dr. Elizabeth Lachman, as her treating psychiatrist, expressed an opinion on September 19, 2016, and again on July 17, 2017, that Snaith had limitations that precluded employment.  (Doc. 11 at 18) (citing tr. 1028-64, 1070-71).  Although Snaith refers to Dr. Lachman as her "treating physician," the record indicates Dr. Lachman was a one-time examiner, as she saw Snaith only on a single occasion in September 2016.  (Tr. 637-43, 656).

The ALJ properly considered and gave limited weight to Dr. Lachman's opinion.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), SSR 96-8p.  An ALJ considers numerous factors when evaluating a doctor's opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, whether the doctor presents evidence to support his or her opinion, and whether the doctor's opinion is consistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  A treating doctor's opinion is generally entitled to more weight, and an ALJ must articulate good reasons for the weight given a treating doctor's opinion.  *See* 20 C.F.R.

§§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The opinion from a one-time examiner, such as Dr. Lachman, is not entitled to deference or special consideration.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).  Moreover, an ALJ may discount any doctor's opinion, even a treating physician, when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinion, or the opinion is inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *See Crawford*, 363 F.3d at 1159-60.

Dr. Lachman saw Snaith on one occasion, an appointment on September 19, 2016, for an initial psychiatric evaluation on referral from Chad Knight, LCSW.  (Tr. 1047-53).  Thus, as the ALJ noted (tr. 656), Dr. Lachman did not have an ongoing, longitudinal relationship with Snaith necessary to be considered a treating physician.  Because of this, the ALJ was not required to articulate "good cause" for according Dr. Lachman's opinions limited weight and was not required to give those opinions any special deference or consideration.  20 C.F.R. §§404.1502, 416.902.

Notwithstanding, the ALJ also found Dr. Lachman's opinions lacked support in the record.  The ALJ found that Dr. Lachman documented few abnormalities on exam and, instead, appeared to base her opinion on Snaith's subjective complaints, which reflected fewer limitations than Dr. Lachman opined.  (Tr. 656, 1040-41, 1047-1053, 1070).  To the extent Snaith contends Dr. Lachman's opinion was supported by "her treatment notes" from Quality of Life (doc. 11 at 20 (citing tr. 1028-64)), all of the treatment notes cited are not from Dr. Lachman.  Instead, these records include notes from Mr. Knight based on a March 2016 visit, which document some abnormalities on mental status exam but indicate Snaith's perception and cognition were within normal limits, Snaith's intelligence was above average, and that Snaith demonstrated no delusions or hallucinations.  (Tr. 1030-33).  There are also records from a March 24, 2016 visit for foot pain

7

with a normal psychiatric exam (tr. 1034-39), a July 5, 2016 visit with Mr. Murdock for depression at which time Snaith completed a patient health questionnaire and which documented a normal psychiatric exam (tr. 1040-46), the notes from the September 19, 2016 visit with Dr. Lachman (discussed above) (tr. 1047-53), and various lab results for Snaith's physical conditions (tr. 1054-64). This evidence does not support the limitations opined by Dr. Lachman, and there is substantial evidence to support the ALJ's decision to give Dr. Lachman's opinion limited weight.

Finally, opinions on some issues, such as whether a claimant is disabled or unable to work and the claimant's RFC "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p. Opinions on issues reserved to the Commissioner are not entitled to controlling weight or special significance. *See* SSR 96-5p. To the extent Snaith contends the ALJ substituted his opinion for that of Dr. Lachman, such an assertion is without merit.

### B. Whether the ALJ Properly Considered the Opinion of Dr. David Wilson

Snaith contends the ALJ failed to accord proper weight to the opinion of Dr. David Wilson. (Doc. 11 at 33-38). Dr. Wilson conducted a one-time examination of Snaith in April 2016. (Tr. 1021-27). Snaith fails to identify any specific issue with respect to the ALJ's evaluation of Dr. Wilson's opinion, instead implying the ALJ substituted his judgment for Dr. Wilson's or was somehow required to give Dr. Wilson's opinion more weight than he did. (Doc. 11 at 33-38).

As explained more fully above, as a one-time examiner, Dr. Wilson's opinions are not entitled to deference or special consideration. *See Crawford*, 363 F.3d at 1160. Nevertheless, the ALJ properly gave Dr. Wilson's opinions limited weight because they appeared to largely reflect

Snaith's subjective responses, and aside from a labile affect[4] and indications of poor hygiene, the observations and interactions Dr. Wilson reported were largely within normal limitations. (Tr. 645-55). Specifically, as the ALJ noted, nothing in the record supported Dr. Wilson's opinion that Snaith would miss twenty days of work during a thirty-day period. (*Id.*). Dr. Wilson reported Snaith's responses to the mental status exam revealed good mental control, attention, and memory. (Tr. 1021-27). Her dress and grooming were neat, despite a rather strong body odor. (*Id.*). She cried during the interview and appeared to have a strong need to talk about her issues, but her thought processes were intact. (*Id.*). Dr. Wilson opined that Snaith could understand, remember, and carry out short, simple instructions. (*Id.*). As the ALJ articulated (tr. 654-55), Dr. Wilson's opinions were based largely on Snaith's subjective complaints and not supported by his own evaluation. This is not a situation where the ALJ substituted his judgment for that of the physician. Substantial evidence supports the ALJ's decision to give limited weight to Dr. Wilson's opinion.

### C.  Whether the ALJ Erred in Finding Snaith Did Not Meet Listings 12.04 or 12.06

Snaith contends she meets Listing 12.04 and/or 12.06, and points to various pieces of evidence to support this assertion. (Doc. 11 at 38-44). At Step Three of the sequential evaluation process, a claimant may establish disability if she proves her impairments meet or equal an impairment listed in the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listing and must provide medical reports documenting that the conditions meet the specific criteria of the Listing and the duration requirement." *Wilson*, 284 F.3d at 1224. "For a claimant to show that his impairment matches a

---

[4] Labile affect, also known as pseudobulbar affect or emotional incontinence, is a disorder where the patient has excessive displays of emotion or expresses emotions that are not congruent with the situation.

listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not quality." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Snaith contends her impairments meet Listing 12.04 for depressive, bipolar and related disorders and/or Listing 12.06 for anxiety and obsessive-compulsive disorders. (Doc. 11 at 38-44). For cases pending on or after January 17, 2017, the updated Listings provide as follows:

To meet Listing 12.04, for depressive, bipolar and related disorders, a claimant must show:

A. Medical documentation of the requirements of paragraph 1 or 2:
   1. Depressive disorder, characterized by five or more of the following:
      a. Depressed mood;
      b. Diminished interest in almost all activities;
      c. Appetite disturbance with change in weight;
      d. Sleep disturbance;
      e. Observable psychomotor agitation or retardation;
      f. Decreased energy;
      g. Feelings of guilt or worthlessness;
      h. Difficulty concentrating or thinking; or
      i. Thoughts of death or suicide.

   2. Bipolar disorder, characterized by three or more of the following:
      a. Pressured speech;
      b. Flight of ideas;
      c. Inflated self-esteem;
      d. Decreased need for sleep;
      e. Distractibility;
      f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
      g. Increase in goal-directed activity or psychomotor agitation.\

AND

B. Extreme limitations of one, or marked limitations of two, of the following areas of mental functioning (see 12.00F):
   1. Understand, remember, or apply information (see 12.00E1).
   2. Interact with others (see 12.00E2).
   3. Concentrate, persist, or maintain pace (see 12.00E3).
   4. Adapt or manage oneself (see 12.00E4).

OR

    C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

To meet Listing 12.06 for anxiety and obsessive-compulsive disorder, a claimant must show:

    A.  Medical documentation of the requirements of paragraph 1, 2, or 3:
      1.  Anxiety disorder, characterized by three or more of the following;
         a.  Restlessness;
         b.  Easily fatigued;
         c.  Difficulty concentrating;
         d.  Irritability;
         e.  Muscle tension; or
         f.  Sleep disturbance.

      2. Panic disorder or agoraphobia, characterized by one or both:
        a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
        b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

      3. Obsessive-compulsive disorder, characterized by one or both:
        a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
        b. Repetitive behaviors aimed at reducing anxiety.

AND

    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
      1. Understand, remember, or apply information (see 12.00E1).
      2. Interact with others (see 12.00E2).
      3. Concentrate, persist, or maintain pace (see 12.00E3).
      4. Adapt or manage oneself (see 12.00E4).

OR

    C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a

> medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Snaith has failed to meet her burden of proving her impairments meet all of the criteria in Listing 12.04 or Listing 12.06.

To the extent Snaith points to the fact she was diagnosed with mental health conditions (doc. 11 at 41-43), diagnoses alone are insufficient to meet a listing. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d). Instead, a claimant must demonstrate her impairments meets all of the criteria. Snaith also relies on her own subjective complaints and opinions from Dr. Lachman and Dr. Wilson. (*See* doc. 11 at 40-44). As discussed above, the ALJ properly accorded limited weight to Dr. Lachman and Dr. Wilson's opinions. Likewise, the ALJ was not required to rely on Snaith's subjective complaints that are not supported by the medical record.

To the contrary, the evidence shows that Snaith did not meet these Listings. The ALJ evaluated the medical evidence related to Snaith's functioning in the "Paragraph B" criteria, finding she did not meet either Listing. (Tr. 651). Specifically, as to her understanding, remembering, and applying information, the ALJ found Snaith to have a moderate limitation. (*Id.*). Snaith has a good educational background and above average intelligence, but reported difficulty with memory, concentration, and accuracy for mental tasks because of physical and mental exhaustion; and stated her depressive disorder greatly disrupted her normal circadian rhythms so that she experienced both insomnia and hypersomnia, sometimes going days at a time without sleeping. (Tr. 651, 913-27). Mary Arnold, Psy. D., examined Snaith in January 2014, and reported her cognition appeared normal; she was able to recall three out of three objects after a five minute

interval, and her mathematical ability, fund of knowledge, and abstract reasoning skills were intact. (Tr. 651, 413-17). During a consultative psychological exam in April 2016 with Dr. Wilson, Snaith demonstrated good short-term and working memory; was able to recall three of three times after ten minutes, and was able to recall six digits forward and six backwards. (Tr. 651, 1025).

As to her ability to interact with others, the ALJ found Snaith to have a moderate limitation. (Tr. 651). Snaith responded in her function report that she had to push herself to get out of the house, as social anxiety, exhaustion, and apathy tended to keep her at home. (Tr. 651, 913-27). However, Snaith reported she went to church on Friday nights and attended Bible study approximately every other week; went grocery shopping after church; and had recently become involved with the Celebrate Recovery group at her church; and described herself as polite and helpful and stated she wanted the approval of authority figures such as bosses. (Tr. 651, 913-27).

With regard to concentrating, persisting, or maintaining pace, the ALJ found Snaith had a moderate limitation. (Tr. 651). She reported that her attention span varied, depending on whether her depression or OCD symptoms predominated, but that she tended to finish short-term tasks and was okay at following both written and oral instructions if she had the chance to write down the latter. (Tr. 651, 913-27). Dr. Arnold reported that Snaith was able to recite the months of the year in reverse, make mental calculations, recite serial sevens, and recall seven digits forward and five digits backwards. (*Id.*). Snaith demonstrated similar cognitive abilities in April 2016, calculating simple and more complex math problems and counting backwards from 100 by sevens to 65; and she had good mental control and attention, according to Dr. Wilson. (Tr. 651, 1025).

As for adapting or managing oneself, the ALJ found Snaith had a mild limitation. (Tr. 651). Snaith reported an aversion to bathing, but despite this problem, Snaith's dress and grooming has generally been appropriate. (Tr. 651-52, 378, 381, 415, 479, 622, 1023). In her function

report, Snaith indicated she was pretty good with taking her medications and could perform various self-care tasks and activities of daily living. (Tr. 652, 914-15).

Snaith has not provided any medical documentation of the paragraph A, B, and C criteria in Listing 12.04 or Listing 12.06. Although there is evidence Snaith had a depressive disorder and an anxiety disorder (which the ALJ recognized when he found Snaith had severe impairments of anxiety and depression) (tr. 650), substantial evidence supports the ALJ's findings that her mental impairments did not cause "marked" limitations in two of the paragraph B criteria required to meeting these Listings. Additionally, the ALJ found the paragraph C criteria was not satisfied, as Snaith did not have a mental disorder that was serious and persistent, i.e., that was medically documented over a period of at least two years, with evidence of medical treatment, mental health therapy, psychosocial support, or a highly structured setting that was ongoing and diminished the symptoms and signs of her mental disorder AND evidence of marginal adjustment or minimal capacity to adopt to changes in her environment or to demands not already part of her daily life. (Tr. 652). Additionally, this conclusion is bolstered by the fact that Dr. Robert Estock, a State Agency psychiatric consultant, opined in his 2014 report that Snaith did not meeting a listing. (Tr. 72). Snaith has not shown otherwise.

### D. Whether the ALJ's Decision is Supported by Substantial Evidence

Finally, Snaith broadly contends the ALJ's decision "is not based on substantial evidence." (Doc. 11 at 44). Specifically, Snaith asserts the ALJ "relied on VE testimony, which was not based on a correct or full statement of [Snaith's] limitations and impairments." (*Id.*). This argument lacks merit. After properly assessing Snaith's RFC, the ALJ found at step four that Snaith could not perform her past relevant work. (Tr. 657). Thus, the ALJ had to proceed to step five and decide whether Snaith could perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.1560(c)(1). To do so, the ALJ obtained testimony from a vocational expert ("VE"). (Tr. 682-85); 20 C.F.R. §§ 404.1566(e), 416.966(e). The ALJ asked the VE to assume an individual with Snaith's age, education, work experience, and an RFC consistent with the one the ALJ assessed. (Tr. 652, 682-84). When asked if jobs existed that such an individual could perform, the VE testified that an individual could perform the representative occupations of small products assembler, bench assembler, and assembler. (Tr. 683-84).

The ALJ was not required to include unsupported opinions or limitations in the hypothetical question to the VE. Snaith has failed to prove she had additional limitations on her ability to work and has not shown she could not perform the jobs the VE identified.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Snaith's claim for a period of disability, disability insurance benefits, and social security income is **AFFIRMED**, and this action **DISMISSED**. A separate order will be entered.

DONE this 15th day of March, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE